**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CIVIL ACTION NO. 19-117-DLB**

**MELISSA L. GOINS**                                                                      **PLAINTIFF**

**v.**                            **MEMORANDUM OPINION AND ORDER**

**ANDREW SAUL,[1] Commissioner**
**of the Social Security Administration**                                     **DEFENDANT**

**\*\*  \*\*  \*\*  \*\*  \*\***

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will **affirm** the Commissioner's decision.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On October 30, 2012, Plaintiff Melissa L. Goins filed for a period of disability and Disability Insurance Benefits ("DIB") under Title II, and Supplemental Security Income ("SSI") under Title XVI, alleging disability beginning on December 8, 2008. (Tr. 87). That application was denied initially on March 6, 2013 and was also denied upon reconsideration on June 20, 2013. *Id.* At Plaintiff's request, an administrative hearing was conducted, *id.*, and on February 18, 2015, Administrative Law Judge ("ALJ") Greg

---

[1]     Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, during the pendency of this action. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

Holsclaw, found that Goins was not entitled to benefits.[2]  *Id.* at 87–102.  On April 13, 2015, Plaintiff filed a new application only seeking SSI, in which she alleged disability beginning January 1, 2009.  *Id.* at 17.  This application was also initially denied, and then denied again on reconsideration.  *Id.*  At Plaintiff's request, an administrative hearing was conducted on December 7, 2017 before ALJ Roger L. Reynolds.  *Id.* at 17, 27.  On May 2, 2018, ALJ Reynolds ruled that Goins was not disabled and, therefore, not entitled to benefits.[3]  *Id.* at 17–27.  This decision became the final decision of the Commissioner on February 11, 2019 when the Appeals Council denied Plaintiff's request for review.  *Id.* at 1–4.

Plaintiff filed the instant action on March 26, 2019, requesting judicial review of the Commissioner's 2018 ALJ decision.  (Doc. # 1).  The matter has culminated in cross-Motions for Summary Judgment, which are now ripe for adjudication.  (Docs. # 14, 15 and 17).

## II.    DISCUSSION

### A.    Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards.  *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007).  "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

---

[2]      This decision will be referred to as the "2015 ALJ decision."

[3]      This decision will be referred to as the "2018 ALJ decision."

Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id*. Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, regardless of whether there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781–82 (6th Cir. 1996).

When a claimant files an application for benefits under the same title of the Social Security Act as a previously determined application, the principal of res judicata places limits on the evidence that an ALJ can review when evaluating the second application. In *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), the Sixth Circuit established that both claimants and the Commissioner are "bound by the principles of res judicata." *Drummond*, 126 F.3d at 841–42. According to *Drummond*, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 842 (citations omitted).

The Sixth Circuit, however, recently clarified that courts have overread *Drummond*. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934 (6th Cir. 2018). The Circuit explained that res judicata only applies if an applicant files a subsequent application for the *same period* of disability. *Id*. at 933 ("[R]es judicata only 'foreclose[s] successive litigation of the very same claim.'" (second alteration in original) (quoting *New Hampshire*

*v. Maine*, 532 U.S. 742, 749 (2001))); *see also id.* ("If an individual . . . files a second application for the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision, res judicata would bar the second application."). *Drummond's* holding was based on the "*principles* of res judicata . . . [f]inality, efficiency, and the consistent treatment of like cases." *Id.* (emphasis added) (citing *Drummond*, 126 F.3d at 841–43). "*Drummond* was never intended to preclude an ALJ 'from giving a fresh look to a new application containing new evidence . . . that covers a new period of disability.'" *Warren v. Saul*, No. 6:18-cv-225-HRW, 2019 WL 3253964, at *2 (E.D. Ky. July 19, 2019) (alteration in original) (quoting *Earley*, 893 F.3d at 931). It was also not supposed to prevent an ALJ from *only* "revisiting [an] earlier finding . . . [when the claimant] offered new and material evidence of a changed condition." *Id.* (first alteration in original) (quoting *Earley*, 893 F.3d at 931). However, "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Earley*, 893 F.3d at 933.

Thus, under the guidance of *Earley*, when an ALJ encounters a successive application from the same applicant that covers a new period of disability, the ALJ "honors [the res judicata principles] by considering what an earlier judge found with respect to a later application and by considering that earlier record." *Earley*, 893 F.3d at 933 (citing *Drummond*, 126 F.3d at 842; *Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 478 (4th Cir. 1999)). In other words, the subsequent ALJ should make determinations based on a "fresh look" at the "new evidence . . . while being mindful of past rulings and the record in prior proceedings." *Earley*, 893 F.3d at 931. A fresh look requires the ALJ to consider

the new evidence and make his or her own determinations about a claimant's limitations. *See, e.g.*, *Sadler v. Comm'r of Soc. Sec.*, No. 18-11689, 2019 WL 4892419, at *6 (E.D. Mich. Aug. 16, 2019), *adopted by Sadler v. Saul*, No. 18-11689, 2019 WL 462703 (E.D. Mich. Sept. 24, 2019) (The ALJ gave a fresh look at the evidence when he "reviewed the new evidence thoroughly to make his own determination at step two" which included adding two new severe impairments not included in the prior ALJ's decision; he also gave a fresh look by "review[ing] treatment records dating back to 2009, and thoroughly discuss[ing] the medical evidence from just before the first ALJ's determination through 2017, well after the date last insured . . . to determine plaintiff's RFC."); *Cornett v. Berryhill*, 6:18-cv-044-JMH, 2019 WL 691776, at *3 n.2 (E.D. Ky. Feb. 19, 2019) ("[H]ere, the ALJ determined that new evidence provided for different findings than those previously made. Thus, the ALJ's decision here does not run afoul of *Earley*." (internal citation omitted)).

### B. The ALJ's Determination

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant has engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant on Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). As to the last step, the burden of proof

shifts to the Commissioner to identify "jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* The ALJ's determination becomes the final decision of the Commissioner if the Appeals Council denies review, as it did in this case. *See Thacker v. Berryhill*, No. 7:16-cv-114, 2017 WL 653546, at *1 (E.D. Ky. Feb. 16, 2017); (Tr. 1–4).

Here, the ALJ applied *Drummond*,[4] 126 F.3d 837, and the five-step sequential evaluation process to conclude that Goins is not disabled; the ALJ found that the record contained no new or material evidence as to the unadjudicated period that justified altering the findings from the 2015 ALJ decision. *See* (Tr. 17–27). At Step One, the ALJ found that Goins has not engaged in substantial gainful activity since April 13, 2015, the date of her application. *Id.* at 20. At Step Two, the ALJ determined that Goins has the following severe impairments:

> insulin dependent diabetes mellitus[;] hypothyroidism[;] cervical and lumbar spine degenerative disc disease with disc protrusions at C3-4 and L2-3, status post lumbar laminectomy; COPD with continued nicotine abuse; alcohol and marijuana/"serenity" abuse, allegedly in remission; history of seizures vs[.] TIA vs. migraine headaches; status post left rotator cuff repair; history of shingles of the left eye; obesity; major depressive disorder; generalized anxiety disorder with PTSD features; paranoid schizophrenia, rule out substance induced mood disorder; angina; mild hearing loss; and hypertension.

*Id.* At Step Three, the ALJ concluded, however, that Goins does not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Between Steps

---

[4]   *Earley* was decided by the Sixth Circuit on June 27, 2018. *Earley*, 893 F.3d 929. The hearing in this matter was held on December 7, 2017 and the ALJ's decision was issued on May 2, 2018. (Tr. 17, 27). As the ALJ decision predates *Earley*, the ALJ relied exclusively on *Drummond* in reaching a decision. *Id.* at 17–27. This, however, does not automatically require the Court to remand the case for reconsideration by the Commissioner. *See infra*.

Three and Four, the ALJ found that Goins possesses the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with the following modifications and limitations:

> [S]he requires a sit stand option with no prolonged standing, walking or sitting in excess of one hour without interruption; no work in low light or where acute near vision is frequently required for safety or job performance; no work requiring more than occasional reading; no work in excessively noisy environments or where acute hearing is required for safety or job performance; no work around concentrated bright or flashing lights; frequent use of the bilateral hands for fingering, grasping or fine motor manipulation; no climbing of ropes, ladders or scaffolds; occasional climbing of stairs or ramps; occasional stooping; no kneeling, crouching or crawling; no aerobic activities such as running or jumping; no work with hands over the head; no operation of foot pedal controls; no exposure to concentrated pulmonary irritants such as dust, gases, smoke, fumes, temperature extremes, excess humidity, concentrated vibration or industrial hazards; requires entry level work with simple repetitive procedures; can tolerate only occasional changes in work routines; and should work in an object oriented environment with only occasional and casual contact with co-workers, supervisors, or the general public.

*Id.* at 22.  In effect, the ALJ adopted the RFC of the 2015 ALJ decision which restricted Goins to light work.[5]  *See id.* at 26, 93.  Then, the ALJ proceeded to Step Four and adopted the finding of the 2015 ALJ decision that she is unable to perform her past relevant work.  *Id.* at 26.  Thus, the ALJ proceeded to Step Five and determined, based on testimony of a vocational expert, that there are other jobs that exist in significant numbers in the national economy that Goins can perform.  *Id.* at 26–27.  Accordingly, the ALJ ruled that Goins has not been under a disability as defined in the Social Security Act since April 13, 2015.  *Id.* at 27.

---

[5]     There appear to be some small differences between the RFC from the 2015 ALJ decision and the 2018 ALJ decision.  *Compare* (Tr. 26) (2018 RFC determination), *with id.* at 93 (2015 RFC determination).  Both RFC's, however, restrict the Plaintiff to light work with certain additional limitations.  *Id.* at 26, 93.

**C.    Analysis**

Goins presents three main arguments in her Memorandum in Support of Motion for Summary Judgment.  *See* (Doc. # 15).  First, she claims that the ALJ erred in his finding that no new and material evidence existed that would warrant deviating from the findings of the 2015 ALJ decision.  *Id*. at 3–7.  Next, she asserts that the ALJ made significant legal errors in his evaluation of the evidence and opinions in the record.  *Id.* at 7–11.  Finally, Plaintiff argues that because the ALJ was not properly appointed under the Constitution, he lacked legal authority to decide this case.  *Id*. at 11–15.  The Court will address each argument in turn.

### 1.    *The ALJ did not err by adopting the findings of the 2015 ALJ decision.*

Goins argues that the record before ALJ Reynolds showed "significant deterioration in [her] mental and physical condition" since the previous ALJ decision such that ALJ Reynolds erred in his decision to adopt the 2015 ALJ decision findings.  (Doc. # 15 at 3–7).  Specifically, Goins highlights additional evidence of hallucinations and delusions, concentration and memory issues, more emergency room visits for both physical and mental impairments, deterioration of her physical condition, worsening of her lumbar condition, and deterioration of her ability to interact with others.  *Id*. at 4–6.  Goins also takes issue with ALJ Reynolds's statement that the worsening of her physical condition could be the result of "non-compliance" with treatment; Goins argues that this conclusion fails to account for financial and situational barriers that have resulted in difficulties adhering to treatment and medication.  *Id*. at 6–7 (quoting (Tr. 24)).  For example, Goins argues that her medication was stolen while she was living at a homeless

shelter; she also explains that her "paranoia convinced her that her medical sources were trying to poison her with her medications." *Id.*

Because the 2018 ALJ decision was issued shortly before the Sixth Circuit's decision in *Earley*, ALJ Reynolds refers to the standard in *Drummond* and Acquiescence Rulings interpreting *Drummond* in his decision. *See* (Tr. 17–18). ALJ Reynolds explained that, under *Drummond* as it was understood at the time, "new evidence will be considered material only if it both differs from that presented in the prior claim and warrants a finding different than that made in the decision on the prior claim." (Tr. 18) (citing Acquiescence Rulings 98-3(6) and 98-4(6)). After finding no such new and material evidence, ALJ Reynolds concluded that he was required to adopt the findings of the prior ALJ. *See* (Tr. 17–18).

ALJ Reynolds's adoption of the prior RFC under a "pre-*Earley* understanding of *Drummond*," raises a "yellow flag." *See Harrell v. Comm'r of Soc. Sec.*, No. 18-10698, 2020 WL 435229, at *7 (E.D. Mich. Jan. 28, 2020). Because Goins's subsequent application covers a time period that the previous ALJ did not consider,[6] res judicata principles would not prevent ALJ Reynolds from giving a "fresh look" to the new evidence after *Earley*.[7] *See Earley*, 893 F.3d at 931; *see also Harrell*, 2020 WL 435229, at *7. In

---

[6]     A time period is one that was not previously considered if the dates covered by each application are not exactly the same. *Harrell*, 2020 WL 435229, at *7 ("[S]ince Harrell's current application for benefits covers a period of time not considered by the prior ALJ, albeit commencing only one day later, he was not constrained by the prior ALJ's assessment in fashioning an RFC for the period at issue.").

[7]     "New evidence" is evidence dated after the previous ALJ decision. *See Amburgey v. Comm'r of Soc. Sec.*, 751 F. App'x 851, 861–62 (6th Cir. 2018) (affirming when "the ALJ's second decision relied on an extensive body of evidence collected after the decision denying plaintiff's first application"); *Ratliff v. Saul*, No. 7:18-cv-114-HRW, 2020 WL 855958, at *3 (E.D. Ky. Feb. 20, 2020) (finding that the ALJ did a fresh review "and reasonably found that nothing about the post-September 2015 [the date of the previous ALJ decision] evidence showed that Plaintiff's conditions rendered her more limited than she was during the prior period of adjudication."). In

fact, district courts in this Circuit have recognized that "*Earley* establishes [that] ALJs must give a 'fresh look' at new applications covering new periods."  *Neal v. Comm'r of Soc. Sec.*, No. 18-10709, 2019 WL 2208555, at *10 (E.D. Mich. Jan. 31, 2019) (citing *Earley*, 893 F.3d at 931–932); *see also Hogren v. Comm'r of Soc. Sec.*, 2:19-cv-854, 2020 WL 830401, at *3 (S.D. Ohio Feb. 20, 2020).

Even though ALJ Reynolds based his decision on a pre-*Earley* understanding of *Drummond*, remand for reconsideration is not necessary if this Court finds that ALJ Reynolds still gave the evidence a fresh look when reaching his decision.  *See Hogren*, 2020 WL 830401, at *3 (finding that if the ALJ "despite purporting to follow *Drummond*, gave the evidence a fresh look . . . then the ALJ's decision satisfie[s] *Earley*; if not, then remand [i]s appropriate" (alterations in original) (quoting *Johnson v. Comm'r of Soc. Sec.*, No. 2:17-cv-13126, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018))).   In other words, even when an ALJ uses language "suggesting that he was required to adopt the prior RFC," an ALJ may be found to have given the evidence a fresh look, as required under *Earley*.  *See Harrell*, 2020 WL 435229, at *7; *see also Brent v. Comm'r of Soc. Sec.*, No. 17-12654, 2018 WL 4403418, at *3 (E.D. Mich. Sept. 17, 2018) (finding that the ALJ "conducted an independent review of the evidence [from after the previous decision]—he 'did not simply apply *res judicata* principles and adopt [the previous ALJ's] findings 'lock, stock and barrel'" (quoting *Kamphaus v. Comm'r of Soc. Sec.*, No. 2:17-cv-11828, 2018 WL 3800243, at *5 (E.D. Mich. July 23, 2018), *adopted by*, No. 2:17-cv-11828, 2018 WL 3770045 (E.D. Mich. Aug. 8, 2018))).

---

this case, the relevant new evidence is evidence from after February 18, 2015—the date of the previous ALJ decision.  (Tr. 17).

Here, a review of the 2018 ALJ decision confirms that ALJ Reynolds, despite language indicating that he was required under *Drummond* to adopt the prior RFC, *see* (Tr. 17–18), considered the newly presented evidence before adopting the findings of the prior ALJ.  In other words, he gave the evidence a fresh look.  *See id.* at 22–26 (discussing medical records from after February 2015 and adopting an RFC with more limitations than the RFC in the 2015 ALJ decision).  Specifically, ALJ Reynolds modified the prior RFC to include limitations of "no aerobic activities such as running or jumping," "no work with hands over the head," and "no operation of foot pedal controls."  *Id.* at 22.  These additional limitations demonstrate that ALJ Reynolds considered new evidence in reaching his decision, rather than "simply apply[ing] res judicata" in the adoption of the RFC from the 2015 ALJ decision.  *See Alexander v. Berryhill*, No. 5:18-cv-163-GFVT, 2019 WL 2250631, at *5 (E.D. Ky. May 24, 2019) (finding that adding new limitations and discussing "the new evidence show that [the ALJ] considered the new evidence"); *see also Harrell*, No. 18-10698, 2020 WL 435229, at *7 (finding the ALJ's addition of new limitations to the RFC meant that he did not actually adopt the prior RFC, even though the language in the ALJ decision suggested he was required to do so).

Furthermore, ALJ Reynolds's descriptions of how he weighed the new evidence from after the 2015 ALJ decision demonstrate that he gave the new evidence a fresh look and thoughtful consideration.  *See* (Tr. 23–26) (discussing medical evidence from July of 2015 forward); *see also Harrell*, 2020 WL 435229, at *6–7 (finding that the ALJ gave the new evidence a fresh look when the ALJ discussed the medical records about Harrell's asthma which indicated that "Harrell did begin new asthma medications, and there is evidence of flare-ups resulting in the occasional need for steroid treatment and

medications for respiratory infections" and "included additional restrictions in the RFC based on Harrell's asthma.").

Although Goins refers to a number of new pieces of evidence in her Memorandum in Support of her Motion for Summary Judgment and argues their existence prevents the adoption of the findings of the 2015 ALJ decision, *see* (Doc. # 15 at 4–7), she fails to specify how ALJ Reynolds inappropriately evaluated those pieces of evidence under *Earley*. In order to satisfy the requirements of *Drummond* and *Earley*, the ALJ need only "weigh the new evidence appropriately"; an ALJ considering new evidence is not required "to make a different determination than the previous ALJ." *Alexander*, 2019 WL 2250631, at *5 (citing *Drummond*, 126 F.3d at 842). ALJ Reynolds's decision carefully details how he evaluated the evidence from the new period of disability. Specifically, he describes why certain pieces of evidence were assigned little weight and why the record as a whole from 2015 onward warrants an adoption of the prior RFC with some additional limitations. *See* (Tr. 22–26).

For example, Goins argues evidence of concentration issues noted by Dr. Geraldo Lima—a psychological consultative examiner—supports a new RFC finding. (Doc. # 15 at 4) (presumably discussing Dr. Lima's opinion at Tr. 328–32). The 2018 ALJ decision demonstrates, however, that ALJ Reynolds considered Dr. Lima's opinion but only gave it partial weight because reports from other treating providers who described Goins's mental impairments after 2015 did not note concentration issues. (Tr. 25) (discussing the consultative examiner's opinion at Tr. 328–32 and comparing it to the records of treating providers at Tr. 448–88).

Goins also points to increased frequency of emergency room visits for mental and physical impairments in support of her argument. (Doc. # 15 at 5). The 2018 ALJ decision demonstrates, however, that ALJ Reynolds considered these new emergency visits and weighed their significance. *See* (Tr. 23) (noting a May 2017 emergency department visit for high blood pressure and headache which resulted in a diagnosis of hypertension and anxiety with a discharge in "improved condition"); (Tr. 23–24) (noting instances in August 2016 and October 2017 in which Goins refused emergency room treatment). Additionally, Goins highlights new medical reports showing physical issues, such as inability to squat or bend, (Doc. # 15 at 5), as well as mental issues, such as behavioral issues that impair interpersonal relationships, *id.* at 6. ALJ Reynolds, however, incorporated limitations into his RFC determination, such as limitations that Goins could not stoop or crouch and could only have occasional contact with co-workers, presumably in light of the issues cited by Goins. (Tr. 22).

Ultimately, while Goins highlights allegedly new impairments from 2015 onward, it is clear from the 2018 ALJ decision that ALJ Reynolds gave the record a fresh look, as required by *Earley*. After doing so, he reasonably found that the evidence collected after the 2015 ALJ decision did not demonstrate that Plaintiff had significantly more limitations which would allow for a finding of disability. Rather, a reasonable person reviewing the record could agree with ALJ Reynolds's findings that the record from 2015 onward warranted an adoption of the prior RFC with some additional limitations. Even if the evidence Goins points to *could* support a more limited RFC than that which ALJ Reynolds assigned, the Court must still affirm ALJ Reynolds's RFC determination, as it was based on substantial evidence. *See Listenbee*, 846 F.2d at 349; *Smith*, 99 F.3d at 781–82.

### 2. The ALJ did not commit legal error in evaluating the medical evidence.

Next Goins argues that ALJ Reynolds committed legal errors when evaluating the opinions in the record—including those of a treating examiner, two consultative examiners, and a third party. (Doc. # 15 at 7–11).

Specific regulations govern the evaluation of opinion evidence for SSI applications filed before March 27, 2017. 20 C.F.R. § 416.927. In evaluating an application, the Social Security Administration ("SSA") considers all of the "the medical opinions in [the] case record together with the rest of the relevant evidence [the Commissioner] receive[s]." *Id.* at § 416.927(b), (c). Medical opinions are "statements from acceptable medical sources[8] that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and [a claimant's] physical or mental restrictions." *Id.* at § 416.927(a)(1). Opinions on issues reserved to the Commissioner—including, among other things, the opinion that the claimant is disabled and a claimant's RFC—are not medical opinions. *Id.* at § 416.927(d).

When considering opinions—including opinions from both acceptable and nonacceptable medical sources, and from nonmedical sources—the Commissioner will consider the following factors to determine the weight an opinion should be given: (1) whether the opinion giver actually examined the claimant, (2) the treatment relationship between the opinion giver and claimant, including the length, nature and extent of the

---

[8]     Acceptable medical sources include the following under certain circumstances: licensed physician, licensed psychologist (including licensed or certified psychologists at the independent practice level), licensed optometrist, licensed podiatrist, qualified speech-language psychologist, licensed audiologist, licensed advanced practical registered nurse, licensed physician assistant. 20 C.F.R. § 416.902.

relationship and the frequency of examination, (3) the support for the opinion, (4) the consistency of the opinion with the entirety of the record, and (5) the specialization of the person giving the opinion.  *Id.* at § 416.927(c), (f).  The opinion of a treating source—the claimant's medical source who provides, or has provided, ongoing treatment and evaluation for the claimant—is given controlling weight when the source's opinion about the nature and severity of the claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  *Id.* at § 416.927(a)(2), (c)(2).  Regardless of the weight given to a treating source opinion, the Commissioner is required to give "good reasons" for the weight given.  *Id.* at § 416.927(c)(2); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (describing the "reasons-giving requirement" as only applicable to treating sources).

### a.    Opinion of Amy Ward, LCSW, LCADC

Goins first argues that the ALJ "evaluated only part of the opinion offered" by Amy Ward—a licensed clinical social worker and licensed clinical alcohol and drug counselor who served as Goins's therapist.  (Doc. # 15 at 8).  In December of 2017, Ward wrote a two-page letter to the SSA, in which she details, among other things, how Goins reported symptoms that may be consistent with post-traumatic stress disorder, schizoaffective disorder, depression, and mania.  (Tr. 739–40).  Goins specifically takes issue with the ALJ's alleged rejection of Ward's "opinion that it would be 'very unlikely that [Ms. Goins] could obtain a job or sustain employment sufficiently to support herself."  (Doc. # 15 at 8) (alteration in original) (citing Tr. 25, 740).  Goins also argues that the ALJ failed to consider—he neither adopted nor rejected—Ward's other opinions.  *Id.* at 8–9.  Goins

suggests that Ward's opinions are entitled to deference because she was a treating source.[9]

Ward, a licensed clinical social worker, however, is not an acceptable medical source under the Social Security Regulations. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 n. 9 (6th Cir. 2016) (citing SSR 06–03, 2006 WL 2329939, at *1 (Aug. 9, 2006)); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 378 (6th Cir. 2013). Because she is not considered an acceptable medical source, she is also not a treating source under the Regulations. 20 C.F.R. § 416.927(a)(2). Despite this, the ALJ must still consider relevant evidence from a therapist. *Id.* at § 416.927(b); *see also Gayheart*, 710 F.3d at 378. This evidence is evaluated using the same factors for evaluating medical opinions from acceptable sources as the "factors represent basic principles that apply to the consideration of all opinions from medical sources who are not 'acceptable medical sources.'" SSR 06–03, 2006 WL 2329939, at *4 (Aug. 9, 2006).

ALJ Reynolds's appropriately considered Ward's opinion. Because Ward is not considered a treating source, *see supra*, ALJ Reynolds was not required to give her opinion deference or explain his reasons for discounting Ward's opinion. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); 20 C.F.R. § 416.927(c)(2). Moreover, ALJ Reynolds was correct to not give "special significance" to Ward's opinion that Goins likely could not work again, (Tr. 25), as the issue of disability is one reserved

---

[9]    Ward indicates that Goins was transferred to the Targeted Assessment Program at the University of Kentucky in January of 2017. (Tr. 740). It is unclear from Ward's letter, however, the extent of the treatment relationship between Ward, a specialist in the Targeted Assessment Program, and Goins. *Id.* at 739–40. The Commissioner admits in its brief that Ward served as Goins's therapist, (Doc. # 17 at 8); thus, the Court will, for the purposes of this matter, accept that Ward treated Goins as a therapist in some capacity.

to the Commissioner, *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th. Cir. 2008).  Additionally, ALJ Reynolds explained why he afforded Ward's other opinions little weight—while Ward's letter describes Goins's "subjective report of symptoms" it "contains little objective evidence in its rationale . . . [and] there is no accompanying opinion of specific, functional limitations."  (Tr. 25); *see also Gayheart*, 710 F.3d at 378 (finding that the ALJ's reasons for discounting a therapist's opinion are well-founded when, among other things, the ALJ found that the therapist's opinion "relies on [claimant's] subjective claims rather than on detailed clinical data, which goes to the supportability of the opinion."); 20 C.F.R. § 416.927(c)(3).  Accordingly, the Court finds no error in the ALJ's evaluation of Ward's opinion.

### b.   Opinion of Geraldo Lima, Ph.D.

Goins also objects to the ALJ's treatment of the opinions of consultative psychologist Dr. Geraldo Lima.  Specifically, she claims that the ALJ "substituted his own lay judgment" when, despite test results allegedly indicating a lack of concentration, he rejected Dr. Lima's opinion that Goins's concentration was limited.  (Doc. # 15 at 9).  Goins claims that this alleged error requires remand.  *Id.*  She is misguided.

Dr. Lima performed a one-time evaluation of Goins's mental condition in September 2015.  (Tr. 328–31).  Dr. Lima found that Goins's "ability to concentrate seemed poor as she was unable to perform serial 3's or serial 7's without errors."  *Id.* at 329.  After examining and interviewing Goins, Dr. Lima issued a finding that Goins had several mental limitations and "is not able to concentrate well and is not likely to be able to complete tasks in a normal amount of time."  *Id.* at 330–31.

To support her argument that the rejection of Dr. Lima's opinion was in error and requires remand, Goins cites a portion of a case which stands for the proposition that treating source opinions are entitled to deference. (Doc. # 15 at 9) (citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009)). Goins is correct that "an ALJ 'may not substitute his own medical judgment for that of the *treating physician* where the opinion of the treating physician is supported by the medical evidence.'" *Id.* at 7 (citing *Simpson*, 344 F. App'x at 194) (emphasis added). Dr. Lima, however, is a *consultative examiner*; he did not have an ongoing treatment relationship with Goins, and therefore is not a treating source. 20 C.F.R § 416.927(a)(2). Thus, his opinion is not entitled to deference. *Simpson*, 344 F. App'x at 194; *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (finding the opinion of a medical professional who was paid by the SSA to examine a claimant one time but provided no treatment was not entitled to the "special degree of deference" afforded to treating physicians). Instead ALJ Reynolds was required to weigh the medical evidence in light of factors included in the Social Security Regulations discussed *supra*. 20 C.F.R. § 416.927(c).

ALJ Reynolds did just that. Consistent with the Regulations, ALJ Reynolds gave Dr. Lima's opinion partial weight. (Tr. 25); *see also* § 416.927(c). ALJ Reynolds explained that he rejected Dr. Lima's opinion about concentration because it was inconsistent with the record. (Tr. 25). Specifically, he found that the record as a whole does not show "significant concentration deficits" on other mental examinations. *Id.* Considering whether evidence supports an opinion and whether the opinion is consistent with the entirety of the record are both appropriate under the Regulations. 20 C.F.R. § 416.927(c)(3), (4). Moreover, the ALJ noted that the Dr. Lima did not address other

factors—including Goins's homelessness and history of drug and alcohol abuse—in his report. ALJ Reynolds found that these "omissions . . . undermine[d] [the report's] persuasiveness." (Tr. 25). The Circuit has found that an opinion giver's awareness of outside social problems, including substance abuse or homelessness, maybe considered in determining how to weigh medical opinions. *See Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 445 (6th Cir. 2011) (finding that "the ALJ provided a good reason why it did not fully defer to the medical opinion of Dr. Svete"; he was unaware of the claimant's drug problem). Accordingly, the Court finds that ALJ Reynolds appropriately considered Dr. Lima's opinion and did not err in his decision to give it only partial weight.

### c. Opinion of Vinod Muniswamy, M.D.

Goins also argues that ALJ Reynolds erred by rejecting the opinion of Dr. Vinod Muniswamy. (Doc. # 15 at 10). Specifically, she argues that ALJ Reynolds found the opinion to be "vague" and rejected it "based solely on his own lay speculation." *Id.* (citing Tr. 24–25). Dr. Muniswamy was a consultative physician who examined Goins's physical condition in July 2015. (Tr. 320–26). In the conclusion of his report, Dr. Muniswamy opined that Goins would have "significant difficulty sitting, walking, and/or standing for a full workday with frequent and adequate breaks, lifting/carrying objects with limitations secondary to pain." (Tr. 324). He did indicate, however, that he thought Goins "can likely hold a conversation, respond appropriately to questions, [and] carry out and remember instructions." *Id.*

ALJ Reynolds again appropriately evaluated the opinion of this consultative examiner. ALJ Reynolds found the opinion to be vague because the examiner did not "specify to what extent the claimant could sit, walk or stand and how much she would be

able to lift." *Id.* at 24–25. Further, he noted that the report was based on a one-time examination and the entirety of the record does not provide evidence of "complaints or treatment for the pain allegedly causing these limitations." *Id.* at 25. He ultimately determined that the opinion should be given little weight.

As he did with other opinions, ALJ Reynolds properly considered the opinion of Dr. Muniswamy. He specifically looked at several of the factors elucidated in the Regulations including the treatment relationship between Dr. Muniswamy and Goins, the support for his conclusions in the record, and the consistency of the opinion with the entirety of the record. 20 C.F.R. § 416.927(c)(2)–(4). Upon review of Dr. Muniswamy's opinion and ALJ Reynolds' decision, it is clear that the ALJ properly weighed this opinion and did not commit legal error in assigning little weight to it.

### d.      Third-Party Evidence

Finally, Goins alleges that ALJ Reynolds "tended to ignore evidence supportive of disability." (Doc. # 15 at 10). In support of this allegation, Goins cites to a form filled out by state agency employee B. Morgan who indicated that Goins was "very labored, breathing, coughing, all very labored and hard to understand" during a phone call. *Id.* (citing Tr. 253). Goins argues that the ALJ's failure to "mention this statement . . . [and] failure to acknowledge third party evidence supportive of Ms. Goins' limitations" is an error which requires remand. *Id.* Put another way, Goins accuses the ALJ of cherry-picking evidence that supports his conclusion and not mentioning evidence that supports a finding of disability. She then cites only limited, out-of-circuit precedent for why the ALJ's failure to mention one statement requires remand. *Id.* at 10–11 (citing *Basinger v. Heckler*, 725

F.2d 1166, 1169–70 (8th Cir. 1984)[10]; *Morris v. Colvin*, Civ. No. 12-2057-JWL, 2013 WL 1729007, at *7 (D. Kan. Apr. 22, 2013).

This statement by Morgan is simply another opinion which the ALJ must weigh under the factors laid out in the Regulations. 20 C.F.R. § 416.927(c). The fact that the ALJ did not discuss the noted statement at all or allegedly ignored evidence supporting a finding of disability—in other words, cherry-picked the evidence to discuss—does not require remand. As the Circuit has continually held, "cherry-picking arguments are seldom successful . . . because 'crediting [them] would require a court to re-weigh the record evidence.'" *Phillips v. Berryhill*, 3:16-cv-193-CHL, 2017 WL 6045451, at *5 (W.D. Ky. Dec. 6, 2017) (alteration in original) (quoting *DeLong v. Comm'r of Soc. Sec. Admin.* 748 F.3d 723, 726 (6th Cir. 2014)). A reviewing district court is not permitted to "try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). As re-weighing the evidence is impermissible, Goins's cherry-picking argument also fails.

### 3. The Appointments Clause issue does not warrant remand.

Finally, Goins argues that the ALJ who heard the case did not have the legal authority to preside over her hearing because he was appointed in violation of the Appointments Clause of the Constitution. (Doc. # 15 at 11–15). She claims that the case must be remanded so her case can be heard by a properly-appointed ALJ. *Id.* In support of her argument, she relies on *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), which found that Securities and Exchange Commission ALJs are inferior officers such that the Appointments Clause of the Constitution requires the President, a court of law, or a head

---

[10] The quote Goins attributes to *Basinger*, however, does not appear to be in the case. *See generally Basinger*, 725 F.2d 1166.

of a department to appoint them to their positions. *Id.* Goins notes that the SSA has admitted that its ALJs, like ALJs in question in *Lucia*, are also inferior officers and that the SSA ALJs were properly reappointed on July 16, 2018. *Id.* at 11–12. Goins, however, failed to raise the Appointments Clause issue when this case was before the SSA. *See id.* at 12.

Subsequent to *Lucia*, a number of courts, including sister courts in this District, have considered how to assess the Appointments Clause issue in the context of social security cases, when the issue was raised for the first time on review by the district court.[11] Generally, a plaintiff who fails to raise a claim during the social security administrative process has forfeited the ability to raise the claim in federal court. *See Maple v. Apfel*, 14 F. App'x 525, 537 (6th Cir. 2001) (citing *Consolidation Coal Co. v. McMahon*, 77 F.3d 898, 903 (6th Cir. 1996); *Hix v. Dir., Office of Workers' Comp. Programs*, 824 F.2d 526, 527–28 (6th Cir. 1987)). Thus, sister courts within this district have found that a plaintiff who fails to raise the Appointments Clause issue before the SSA has waived their right to raise the issue in federal court.[12] *Killion v. Saul*, 7:18-cv-27-JMH, 2019 WL 4645569,

---

[11]    It does not appear that the Sixth Circuit has addressed this issue. In fact, it appears that only the Third Circuit, which found that claimants did not have to raise the Appointments Clause issue before the Administration, has addressed this issue in the social security context. *See Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (10th Cir. 2020).

[12]    Several courts in this Circuit have found that *Sims v. Apfel*, 530 U.S. 103 (2000), does not disrupt the requirement of general administrative exhaustion. *See Gearing v. Comm'r of Soc. Sec.*, 417 F. Supp. 3d 928, 940–41 (N.D. Ohio 2019) (collecting cases). *Sims* only narrowly holds that "issue exhaustion was not required in a request for review by the Appeals Council." *Id.* (citing (*Sims*, 530 U.S. at 109)). Goins claims that because issue exhaustion isn't required at the Appeals Council, "the only possible remaining technical defense which the Agency can offer is that the claimant failed to raise the issue before the ALJ and thereby forfeited it." (Doc. # 15 at 12). She argues that SSR 19-1p "unambiguously provides that a claimant need not raise a[n] . . . Appointments Clause challenge at the ALJ level in order to obtain relief on that issue." However, Goins "mischaracterizes SSR 19-1p" as it states that "The Appeals Council will grant the claimant's request for review in cases where the claimant: (1) Timely requests Appeals Council review of an ALJ's decision or dismissal issued before July 16, 2018; and (2) raises before us

at *4 (E.D. Ky. Sept. 24, 2019); *Mullins v. Berryhill*, 7:18-cv-002-JMH, 2019 WL 1339588, at *2–3 (E.D. Ky. Mar. 25, 2019); *Blackburn v. Berryhill*, 368 F. Supp. 3d 1110, 1112, (E.D. Ky. 2018) (collecting cases and explaining that "it appears that every district court to have considered the issue has determined that plaintiffs are required to raise similar challenges at the administrative level").  Without further guidance from the Sixth Circuit and Supreme Court, the Court will follow the lead of other courts within this District and Circuit which have found the Appointments Clause argument forfeited when it was not raised below.  *See, e.g.*, *Willis v. Comm'r of Soc. Sec.*, No. 1:18-cv-158, 2019 WL 5690610, at *3 (S.D. Ohio Nov. 4, 2019); *Sturdee v. Comm'r of Soc. Sec.*, No. 1:18-cv-770, 2019 WL 4743836, at *3 (W.D. Mich. Sept. 30, 2019); *Smith v. Saul*, No. 1:17-cv-01236-cgc, 2019 WL 4131740, at *2 (W.D. Tenn. Aug. 28, 2019); *Fitzgerald v. Berryhill*, No. 1:17-cv-144-GNS-LLK, 2019 WL 1125666, at *3–4 (W.D. Ky. Mar. 12, 2019); *Shopps v. Comm'r of Soc. Sec*, No. 18-cv-10444, 2019 WL 2051902, at *16 (E.D. Mich. Feb. 14, 2019).  Thus, as Goins did not raise the Appointments Clause issue before the SSA, she is precluded from raising it now.  Accordingly, her final argument is meritless, and the case does not require remand.

## III.  CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for the purposes of the Social Security Act was supported by

---

(either at the Appeals Council level, *or previously had raised at the ALJ level*) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision or dismissal in this case."  *Gearing*, 417 F. Supp. 3d at 942 (quoting SSR 19-1p, 2019 WL 1324866, at *3 (S.S.A. Mar. 15, 2019)).  Even under the guidance provided in SSR 19-1p, courts in this Circuit have still found that Appointment Clause issues must be raised at the administrative level or they are forfeited on judicial review.  *See, e.g.*, *id.* at 943.

substantial evidence. Additionally, Goins's arguments in support of remand are meritless. Accordingly,

IT IS ORDERED as follows:

(1)    The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)    Plaintiff's Motion for Summary Judgment (Doc. # 14) is hereby **DENIED**;

(3)    Defendant's Motion for Summary Judgment (Doc. # 17) is hereby **GRANTED**;

(4)    This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5)    A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 18th day of March, 2020.

Signed By:

*David L. Bunning*  DB

United States District Judge

J:\DATA\SocialSecurity\MOOs\Lexington\19-117 Goins MOO Revised.docx